*Addison,*
January,
1826.

ABEL TOMLINSON defendant below, *vs.* REUBEN WHEELER, plain-
tiff below.—*IN ERROR.*

*Dicta*—According to the English authorities, a writ of error, though a *supersedeas,* does not stop
    the proceedings of an officer, after he has made his levy, or began his service of an execution.

An officer is liable for neglect of duty in an unreasonable delay of the sale of property, on execution,
    notwithstanding it was turned out by the creditor at so late a period, that it could not be legally
    sold within the life of the execution.

*Held,* that the liabilities of a sheriff for his deputy, are those which the law imposes, and are for the
    neglect of duties which the law requires to be done.   And he is not liable for the breach of a *prom-
    ise,* which the deputy makes.

The deputy cannot make a promise to bind the sheriff, unless it be to pay over monies collected on
    execution, and in that case, an action for a tortious neglect may as well be brought.

*Assumpsit* will not lie against the sheriff, on a promise of his deputy, to serve and return an execu-
    tion according to law, contained in his receipt for such execution.

REUBEN WHEELER brought his action of *assumpsit* against
*Abel Tomlinson,* late sheriff of the county of Addison, charging
that he recovered a judgment before the city court, in Ver-
gennes, on the first Tuesday of November, 1822, against one
*Friend Adams,* of Panton, in said county, for $1207,21 damages,
and for $43,46, cost; that on the 6th day of said November he
obtained his regular writ of execution upon said judgment, di-
rected to the sheriff of said county of Addison, his deputy, &c.
dated the day last aforesaid, and made returnable within sixty
days from date, and delivered the same to the defendant, *to levy,
execute and return according to law, and the directions therein given,*
and the defendant, by *S. B. Booth,* then and still his lawful dep-
uty, then and there received said execution, and then and there
promised to serve and return the same according to law, as by
the defendant's receipt in writing, ready to be produced in
Court, will appear.    Yet the defendant, not regarding his prom-
ise, hath not performed, but has wholly neglected to collect and
pay over, &c.    *Non assumpsit* and issue joined to the Court, and
found for the plaintiff in the county court.

It appeared by the bill of exceptions, as allowed by the coun-
ty court, and contained in this writ of error, that Wheeler, on
the occasion of delivering his execution to *Booth* the deputy,
took of him a receipt therefor, in writing, containing the usual
undertaking, to *collect and account for the execution according to
law.*    That about three days before the expiration of the life of
the execution, Wheeler, at the request of the deputy, turned out
to him, property of Adams sufficient to satisfy the amount, and
that the deputy posted the same for sale, but adjourned the ven-
due from time to time, until the 25th day of *April,* 1823, when
a writ of error upon that judgment, with all the legal requisites
of a *supersedeas,* was served upon said Booth, and the present
plaintiff in error.

*Phelps,* for the plaintiff in error, insisted,  1st, that *assumpsit*
will not lie against a sheriff for a neglect of his duty.  The only
remedy being by action on the case, or debt under the *Stat. of
Westminster.* ` Much less will it lie against the sheriff for the de-

fault of his deputy. (*McMillan* vs. *Eastman*, 4 *Mass. R.* 378— *Walbridge* et al. vs. *Griswold*, 1 *D. Chip. R.* 162—*Bac. Ab. Tit. escape F.*) To maintain *assumpsit*, an express promise, by the defendant, must be proved.—*Tuttle* vs. *Lane*, 7 *Johns. R.* 470.

*Addison,*
*January,*
*1826.*

Tomlinson
*vs.*
Wheeler.

2d. If *assumpsit* can be sustained, the evidence stated in the bill of exceptions does not support the declaration.

The contract stated, was done away by the subsequent proceeding of the creditor, in turning out the debtor's property, at the late day stated.

Indeed, if the action had been case, it could not be supported in the present shape. The declaration should count upon a default, in not selling within the time limited by law.

*Bates,* for the defendant in error, contended, 1st, that the receipt of the deputy imports, or rather is an *express promise* "to collect according to law." The following words in the latter part of the receipt, "received to collect and account for according to law," are an undertaking or *express promise* to this effect.

2d. The express promise of the *deputy,* is the express promise of the sheriff, as much as a promissory note executed by an authorized agent is the promissory note of the principal. The promise of the principal is not, in either case, an *implied,* it is an *express promise.*

The statute provides, that "all acts, doings and returns of such deputies shall be signed by them respectively, as deputy sheriff, and shall be taken and deemed as the act of the sheriff appointing them."

3d. The arrangement between the creditor and deputy, in regard to turning out property, was one of those transactions which, in the service of executions, are common and beneficial to all parties, and was strictly within the *official* duty of the deputy, and therefore binds the sheriff, and no more discharges him from his obligations on the receipt, than if he himself had made the arrangement. The statute says "and the sheriff shall in all things be amenable and responsible for the conduct of his deputies in office." There is only this proviso, "that no sheriff shall be amenable, *criminally,* for the conduct of his deputy, other than for fines and amercements for neglect of duty." This arrangement, then, is to be taken as the act of the sheriff, on the same principle that the receipt is *his* receipt, and for him to set up this arrangement as a defence, when he did not perform his part of it, would be to avail himself of his own fraud.

Although there was not time, after the property was turned out, to advertise it fourteen days, and sell it within the life of the execution, still it was not the design of either party to release the obligation on the receipt. It was a mere modification of the *manner* in which the promise should be performed, and had Booth proceeded to sell the property, according to his engagement, as soon as the law permitted, he would, as between Wheeler and him, have collected the execution "according to law," in the language of the receipt.

Addison,
January,
1826.

Tomlinson
vs.
Wheeler.

But supposing that a true construction of the promise was to serve the execution in sixty days, and that by turning out the property too late to be sold within that time, Wheeler must be taken to have extended the time. It has been repeatedly decided, that an extension of *time*, or variation of the *mode* of performing, does not release the original contract.—*Philips Evidence*, 438—1 *Maule and Selwyn*, 21.

4th. After a sufficient and reasonable time for the officer to sell the property had elapsed, he became liable to the creditor, by failing to do his duty. A subsequent writ of error could not remove this liability; the utmost extent of a writ of error, in this respect, is to stay any *future* proceedings on the execution.

Besides, in this case, although Wheeler, by consenting to turn out the property at that time, put it out of his own power to complain, if the officer had sold as soon as practicable after receiving it, still the execution had expired, by its own limitation, three months before the service of the writ of error, which is said to have been a *supersedeas*.

The opinion of the Court was delivered by

HUTCHINSON J. The questions that are raised upon this writ of error, seem comprised in the following, to wit:

1st. Whether the promise proved, corresponds with the one alleged in the declaration, or whether the turning out the property at so late a period of the execution, affects the question at all, and if so, how.

2d. Whether the writ of errror serves as an excuse for the defendant, for the neglect complained of.

3d. Whether *assumpsit* is the proper action to try the questions presented.

With regard to the first point, the legal import of the promise in the declaration, is, that the defendant would levy, collect, &c. in the life of the execution; and the date of the promise alleged, would give him time enough to do it. The turning out property, when the execution had but three days to run, was at least a consent of Wheeler, that the deputy, Booth, should have fourteen days from that time, in which to perform his promise. The safer and better mode of declaring, would have been to frame a declaration with one or more counts, so as to meet this state of things, and avoid all questions of variance, as also of licence for neglect. The Court, however, attach too little importance to this point, to present any critical view of the authorities.

Upon the second point, it may be observed, that according to the English authorities, a writ of error, though a *supersedeas*, does not stop the proceedings of an officer, after he has made his levy, or began his service. But that question does not arise here, for, if any liability of the officer is shown at all, it was complete long before the writ of error was served; and there is no pretence of any consent of Wheeler, that the sale should be delayed as it was, by the officer's adjourning from time to

time for several months. The officer, therefore, was rendered liable, by his neglect, in some form of action and mode of declaring. But,

3d. The Court consider that *assumpsit* will not lie, in a case like the present. The deputy cannot make promises to bind the sheriff, unless it be to pay over money collected on execution, and then an action for tortious neglect may as well be brought. The liability of the sheriff for his deputy, is that which the law imposes, and is for the neglect of duties which the law requires, not for the breach of promises which the deputy makes.

> For this reason the judgment of the county court is reversed, and the Court proceed to render such a judgment as the county court ought to have rendered, which is, that Tomlinson recover of Wheeler his taxable costs in the original action, Wheeler against him, together with the costs of this writ of error.

*Saml. S. Phelps,* for the plaintiff in error.

*E. D. Woodbridge* and *R. B. Bates,* for the defendant in error.